**In the Matter of Sammy PETTIT, Dorothy Pettit, Debtors.**

**Bankruptcy No. 84–93–C.**

United States Bankruptcy Court, S.D. Iowa.

April 26, 1985.

John E. Casper, Winterset, Iowa, for Union State Bank.

Thomas L. Flynn, Des Moines, Iowa, Trustee.

### MEMORANDUM OF DECISION AND ORDER

RICHARD STAGEMAN, Bankruptcy Judge.

The question before the court is whether a profit sharing plan is exempt property. The Debtors contend that their interest in a profit sharing plan established for the employees of the Union State Bank of Winterset ("Bank") is exempt property under Section 627.6 of the Iowa Code. The Bank and the trustee have filed objections to this claim of exemption. A hearing on these objections was held on July 31, 1984. The court, now being fully advised, makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. A profit sharing plan has been created by the Bank for the benefit of its employees. The Plan's provisions are contained in a document entitled "Amended and Substituted Union State Bank Profit Sharing Plan and Trust" ("Plan").

2. Articles I and II of the Plan state that the plan is intended to provide retirement and other benefits for the sole and exclusive benefit of the Bank's employees.

3. Debtor Dorothy Pettit was an employee of the Bank from February 7, 1979, until her employment was involuntarily terminated on April 30, 1984.

4. During her employment, the Bank made contributions to the Plan on her behalf. The value of the Debtor's interest in the fund as of December 31, 1983, was $16,042.29.

5. The Plan is a qualified plan under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Debtor's interest in the Plan is fully vested.

6. A letter from the Debtors to the Bank on January 18, 1984, purports to as-

James L. Spellman, Des Moines, Iowa, for debtors.

sign the Debtors' entire interest in the Plan fund to the Bank as payment on a promissory note.

7. A letter from the Bank to the Debtors, dated February 20, 1984, states that the Bank would neither accept nor give legal effect to the assignment.

8. Article IX, Section 12 of the Plan prohibits benefits payable under the Plan from being alienated, assigned, encumbered, or otherwise transferred and states that attempts to do so will be void.

9. On May 1, 1984, the Debtors filed a Second Amendment to Schedule B–4 of their bankruptcy petition. This amendment included the claimed exemption of the Plan.

10. Management of the Plan fund is vested in the Plan trustee. Disbursements under the Plan are controlled by the trustee and a Committee consisting of the president of the Bank, two members selected by the Bank's Board of Directors and two members selected by Plan participants.

11. Article IX, Sections 2–10 of the Plan call for cash payment in lump sum to participants or their beneficiaries only upon certain specified events. Payment will commence on the earliest of the participant's 60th birthday, retirement, disability, termination of employment or death. The Committee appointed to administer the Plan payments may, in its sole discretion, authorize payment of up to seventy-five percent of the participant's benefits in a hardship case due to illness or accident.

12. The Debtors' monthly expenses for utilities, insurance, medical costs, clothes, fuel for their car and groceries exceed $750 a month.

13. Debtor Dorothy Pettit received unemployment compensation of $705 a month during the period of April 1 to August 6, 1984. Mrs. Pettit now is employed and earns approximately $700 a month.

14. Debtor Sammie Pettit is presently disabled with an ailment related to his esophagus and stomach.

15. A letter from Mr. Pettit's physician dated August 23, 1984, states that Mr. Pettit's ailment called for surgery which had only 80% chance of being effective and a recovery time of 6 months to a year. The surgery was performed in May 1984. The letter also states that Mr. Pettit has a 10% chance of developing a cancer related to his condition.

16. Dorothy Pettit is 48 years of age and Sammie Pettit is 52 years of age.

17. The Debtors claim the following property as exempt:

| | |
|---|---:|
| 40 acre homestead | $80,000.00 |
| Farm machinery | 8,900.00 |
| Two motor vehicles | 1,850.00 |
| Three life insurance policies | 52.00 |
| Tax refunds | 1,800.00 |
| Wages | 200.00 |
| Household goods, furnishings, jewelry, clothing and personal effects | 5,000.00 |
| Total | $97,802.00 |

18. The property claimed as exempt is substantially the extent of the Debtors' remaining assets. The homestead area is able to produce three acres of corn and hay.

19. The present State of Iowa's general exemption provision, Iowa Code Section 627.6, became effective July 1, 1981.

## MEMORANDUM OF DECISION

The Bank claims that the profit sharing plan has been assigned to it as payment on a $54,000 mortgage note to the Bank. The Debtors' purported assignment is based on the Debtors' January 18, 1984, letter.

Acceptance by the assignee is usually a requisite element of an assignment. 6A *C.J.S.* Assignments § 63 (1975); *Restatement (Second) of Contracts* § 327 (1981). In determining whether acceptance has occurred, the intent of the parties controls. *Broyles v. Iowa Department of Social Services*, 305 N.W.2d 718 at 721 (Iowa 1981). Given the Bank's letter rejecting the assignment, it is difficult to find any intent to accept the Debtors' assignment offer. In addition, the express terms of the Plan (to which the Bank is a party as employer), prohibit any assignment of the

fund. The Plan itself deems all attempts to assign as void. Under these facts, there was no assignment or waiver of the Debtors' exemption rights.

The Bank also claims that this profit sharing plan is not exempt under Iowa law. Section 627.6(9)(e) of the Iowa Code states as follows:

A debtor who is a resident of this state may hold exempt from execution the following property:

. . . .

9. The debtor's rights in:

. . . .

e. A payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Section 627.6 *Code of Iowa* (1983).

The Bank argues that a "profit-sharing plan" is not specifically mentioned in the Iowa statute, and asserts that a profit sharing plan is not a "similar plan or contract" within the intendment of the Iowa exemption statute. In support of its position the Bank first compares the federal exemption provision in Section 522(d)(10)(E) of the Bankruptcy Code to the state statute. The Bank points out that, while the two provisions are very similar, the later state statute does not include the terms "stock bonus" and "profit sharing." The argument of the Bank is that this omission was necessarily intentional and restricts the Iowa exemption.

There is no legislative history to support the Bank's restrictive interpretation of Section 627.6. Furthermore, although the words "profit sharing plan" are absent in the exemption statute, the scope of the phrase "or similar plan or contract" could easily encompass a profit sharing plan. It is significant to note that two neighboring states have not hesitated to exempt profit sharing plans. Minnesota's exemption statute states:

Subd. 24. Employee benefits. The debtor's right to receive a payment, or payments received by the debtor, under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Minn.Stat.Anno. § 550.37 (Supp.1985).

Missouri's exemption statute states:

(10)(e) A payment under a stock bonus, pension, profit-sharing, annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of such person and any dependent of such person unless:

Vernon's Anno. Missouri Stat. § 513.430 (Supp.1985).

While Iowa's statute does not specifically use the words "profit sharing plan," an examination of the Minnesota and Missouri exemption statutes would lead the court to conclude under the rule of *ejusdem generis* that Iowa's legislature intended a profit sharing plan under the phrase "similar plan or contract." *Brown v. Bell*, 146 Iowa 89, 123 N.W. 231 (1909).

■ It is likely that the legislature's reason for including "similar plan or contract" in the statute was to give the courts some latitude in treating varying factual situations under this exemption section. Exemption statutes are usually construed liberally in "carrying out the beneficent object of the legislation." *Frudden Lumber Co. v. Clifton*, 183 N.W.2d 201, 203 (Iowa 1971). The object of exemption statutes is to protect debtors and their families from the deprivation of those things "essential for their education, culture, and spiritual upbuilding." *Dunbar v. Spratt-Snyder Co.*, 208 Iowa 490, 226 N.W. 22 (1929). It is reasonable to conclude that the state legislature, by using the terms "similar plan or contract," intended that plans having "pension" or "annuity" characteristics should be exempt. Such an intent would further the "fresh start" purpose of exemption statutes in that "pension-annuity" type arrangements are cre-

ated to fill or supplement a wage or salary void.

In determining whether the instant profit sharing plan is in fact "similar" to a pension or annuity, it becomes necessary to review the characteristics of pension and annuity plans. Generally, pensions are intended to function as wage substitutes at some future period. *In re Donaghy,* 11 B.R. 677 (Bkrtcy.S.D.N.Y.1981). As a wage substitute, the pension plan payments afford debtors an opportunity to get back on their feet and support the basic requirements of life. *Id.* See also *In re Turpin,* 644 F.2d 472 (5th Cir.1981). Thus, the benefits under an exempt pension plan are generally not available until a time when the beneficiary's earning capacity is limited. *In re Miller,* 33 B.R. 549 (Bkrtcy. D.Minn.1983).

An annuity is a right to receive a specified income payment for a fixed or contingent period. See 3A C.J.S. *Annuities* § 2 (1973). Typically, an annuity is "purchased" during a period of employment with an intent to draw the annuity payments during retirement or to provide one's beneficiaries with an income source in the event of one's death. An annuity, therefore, is like the common pension plan in that access to the annuity fund is restricted by limiting conditions (i.e. retirement, disability, death, etc.).

■ Based on this review of the general characteristics of pensions and annuities, the court finds that the qualities of a "plan or contract" similar to pension plans and annuities include:

A formal plan or fund established for the benefit of the debtor, usually as part of a relationship with an employer or employee organization.

The benefits of the plan or fund are of a nature "akin to future earnings" of the debtor and intended as retirement income or at least income deferred during the debtor's employment to provide future support for the debtor.

Access and control of the plan or fund in the hands of someone other than the debtor with strong limitations on withdrawal or distribution expressed in the formal plan or fund for the purpose of providing retirement or deferred income.

That payment under the plan or contract is to be on account of illness, disability, death, age, or length of service.

Any plan or contract exhibiting these characteristics should be exempt under Iowa Code § 627.6(9)(e).

■ Reviewing the Debtor's Plan and based on the findings of fact, the court finds that:

1. The Plan was established by the Debtor's employer and intended for her retirement.

2. The fund management and distribution is out of Debtor's control, except upon certain events which are consistent with the purpose of providing future support for the Debtor or her dependents.

3. The distribution events are related to age, disability, death or length of service. As such, this profit sharing plan falls within the intent of the state exemption statute.

Though the Debtor's profit sharing plan is found to be of a type intended for exemption, the statute allows an exemption of plan payments only to the extent "reasonably necessary" for the Debtor's support and for the support of the Debtor's dependants. Iowa Code § 627.6(9). The Bank says the funds are not reasonably necessary for the Debtors' support.

■ In deciding what is "reasonably necessary" for the Debtors' support, the court must look to the Debtors' existing income, their other exempt property and in relation to their basic needs. *In re Johnson,* 36 B.R. 54 (Bkrtcy.D.N.M.1984). As stated by the court in *Matter of Taff,* 10 B.R. 101 (Bkrtcy.D.Conn.1981).

[T]he reasonably necessary standard requires that the court take into account other income and exempt property of the debtor, present and anticipated, ... and that the appropriate amount to be set

aside for the debtor ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed but taking into account the special needs that a retired and elderly debtor may claim. *Id.* at 106.

The bankruptcy cases also generally include future needs of the debtor in determining what is reasonably necessary. In *In re Miller,* 33 B.R. 549 (Bkrtcy.D.Minn. 1983), the court acknowledged that the debtor's pension plan was not currently necessary, but that Congress intended that the "reasonably necessary" provision look to the debtor's future needs as well, such as retirement needs. *See also In re Donaghy,* 11 B.R. 677 (Bkrtcy.S.D.N.Y.1981); *Matter of Kochell,* 31 B.R. 139 (W.D.Wis. 1983).

In *Kochell,* the court found that the debtor had not demonstrated any present need and only speculative future need. The court noted that the debtor was a doctor, in good health at age 44, with many years of high earnings ahead of him. It was this income and its availability to re-establish a fund upon which the debtor was directed to rely and not upon his present pension fund. *See also, In re Clark,* 18 B.R. 824 (Bkrtcy. E.D.Tenn.1982).

Debtor Dorothy Pettit became eligible to receive her entire portion of the Plan fund upon her termination of employment with the Bank. This portion totals at least $16,-042.00. Most of the assets exempted by the Debtors are needed for a potential fresh start and a high percentage are fixed assets not readily suited for liquidation. Due to Mr. Pettit's disability, funds to meet every day expenses appear to be limited primarily to Mrs. Pettit's income. The Debtors are not shown to possess skills commanding high compensation. If used to supplement the Debtor's present income, the Plan cannot be expected to last far into the future.

█ It is the court's conclusion that the Plan fund is not only reasonably necessary,

but vital for the present and future support of the Debtors to insure their fresh start. Therefore, under the existing state exemption statute, the Debtor's rights in these Plan payments qualify as exempt property.

The Bank argues that the "present" Section 627.6(9)(e) of the Code of Iowa, cannot be retroactively applied to debts existing prior to the July 1, 1981, changes in the state exemption law. The Bank asserts that such an application of the new law would impermissibly impair the Bank's contractual arrangement with the Debtor. In support of its position the Bank cites *Sturgeon v. Steele,* 563 F.2d 1154 (4th Cir.1977); *England v. Sanderson,* 236 F.2d 641 (9th Cir.1956); *In re Pappas,* 2 B.R. 138 (Bkrtcy.C.D.Cal.1980); and *In re Malpeli,* 7 B.R. 508, 7 Bankr.Ct.Dec. (CRR) 249 (Bkrtcy.N.D.Ill.1980).

The *Malpeli* case dealt with avoidance of a security interest under Section 522(f) of the Bankruptcy Code. The Debtors' case does not deal with Section 522. The Bank does not even hold a security interest in the property claimed exempt. Therefore, the court declines to address any issue regarding the avoidance of certain security interests under Section 522(f).

The *Steele, Sanderson,* and *Pappas* cases support the position that an exemption statute cannot be applied to impair a creditors' contractual rights existing prior to the date of enactment of the statute. The court takes notice that at least one of the Bank's proofs of claims evidences a debt incurred prior to July 1, 1981, the effective date of the revised Iowa exemption statute.

The question raised by the Bank and dealt with in the three cited cases is grounded in the contract clause of the United States Constitution.* Article I, Section 10, Clause 1 states:

No State shall ... pass any Bill of attainder, ex post facto Law, or Law impairing the Obligation of Contracts....

U.S. Const. Art. I, § 10, cl. 1.

█ The rule derived from a long line of Contract Clause cases is that a material

---

* The Constitution of the State of Iowa, Art. I, § 21, also has a similar clause.

impairment of the means of enforcement may also impair the obligation of a contract. See *Edward v. Kearzey,* 96 U.S. (6 Otto) 595, 24 L.Ed. 793 (1877); *Gunn v. Barry,* 82 U.S. (15 Wall.) 610, 21 L.Ed. 212 (1872); *McCracken v. Hayward,* 43 U.S. (2 How.) 608, 11 L.Ed. 397 (1844); *Bronson v. Kinzie,* 42 U.S. (1 How.) 311, 11 L.Ed. 143 (1843).

The threshold question, therefore, is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel v. Spannaus,* 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978).

Though Section 627.6(9) was a new provision in the 1981 state enactment and a substantial change from prior law, the court finds that there has been no impairment of the Bank's contractual relationship with the Debtors. The reason is that the Bank could not have reached the fund here under a creditor-debtor relationship with the Debtors prior to the 1981 change in the Iowa exemption statute.

The Debtor's profit sharing Plan, is a qualified ERISA plan. As to such plans, federal case law has construed the anti-alienation or assignment provisions of ERISA to preclude any voluntary or involuntary encroachments on benefits provided under the plan. *See, e.g., Tenneco, Inc. v. First Virginia Bank of Tidewater,* 698 F.2d 688 (4th Cir.1983); *General Motors v. Buha,* 623 F.2d 455 (6th Cir.1980); *Cody v. Riecker,* 454 F.Supp. 22 (E.D.N.Y.1978).

The court in *Buha* points to the legislative history on ERISA that indicates Congress was thinking of judicial process such as garnishment and levy when discussing assignment and alienation, whether the funds are in trust or in pay status. *Buha,* 623 F.2d at 460, citing H.R.Rep. 1280, 93rd Cong., 2d Sess., reprinted in 1974, U.S.Code Cong. & Ad.News, 5038, 5061. Also, under the broad authority granted by Congress, the Treasury and Labor Departments have promulgated regulations requiring plans to prohibit all legal process from reaching benefits provided under the plan. See Treas.Reg. § 1.401(a)–13(b) (1978). The regulations further clarify that once a participant or beneficiary begins to receive benefits under the plan, a plan may allow the participant or beneficiary to assign or alienate the right to future benefit payments up to 10% of any benefit payment, but such an assignment or alienation is still limited to those of a voluntary and revocable nature. Treas.Reg. § 1.401(a)–13(d)(1) (1978). The effect given the legislation and regulations is to prohibit general commercial creditors from reaching the benefits of qualified plans. See also, *In re Graham,* 726 F.2d 1268, 1273 (8th Cir.1984) (twice noting that the anti-alienation provisions of ERISA are construed as barring use of garnishment or "judgment enforcement devices" by general commercial creditors of a beneficiary).

Based on this federal case law, the court is persuaded that a general creditor of this Debtor could not have reached the benefits of the Debtor's qualified ERISA plan outside bankruptcy proceedings. Any contract between the debtor and a creditor in this case did not have its means of enforcement impaired by the state exemption change because federal law would have precluded enforcement against the plan assets anyway. The state exemption statute as applied is constitutionally valid.

Having found that the property claimed as exempt falls within the coverage of the currently applicable state exemptions under Section 522(b)(2)(A) of the Bankruptcy Code, the court enters the following order.

It is, ORDERED, that the objections to the Debtors' claimed exemptions by the trustee and the Union State Bank are overruled.