In the Matter of John P. HYSOCK, Debtor.

Elizabeth H. SHARP, Plaintiff,

v.

John P. HYSOCK, Defendant.

Bankruptcy No. 85–341.

Adv. No. 85–78.

United States Bankruptcy Court, D. Delaware.

June 16, 1987.

Laurence I. Levinson, Wilmington, Del., for plaintiff.

Eric M. Doroshow, Wilmington, Del., for debtor/defendant.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

John P. Hysock is a debtor in a Chapter 7 bankruptcy case. His former wife, Elizabeth H. Sharp, seeks a determination that debtor's agreement to assume payment of a second mortgage against the marital home under the terms of a separation agreement constitutes alimony, maintenance or support so as to be non-dischargeable under 11 U.S.C. § 523(a)(5). The provisions of § 523(a)(5) reflect a Congressional concern for preserving the right of a debtor to a fresh start under the bankruptcy law and yet providing for the continuing needs of the family. Thus, Mrs. Hysock, now Mrs. Sharp, has the burden of proving the obligation was intended to provide alimony, maintenance or support and that the assumption of that obligation was necessary to provide for the continuing needs of the family.

The parties who were married in November 1967 and divorced in November 1981 are the parents of two sons. The marital home had been purchased in 1972 for $16,900 with full financing by FHA. In 1975, they borrowed from and gave to American Finance Company a second mortgage for $5,000 to build an addition to the house. They used the money for other purposes. The parties separated in July 1979. On July 20, 1979, they refinanced the second mortgage, using the proceeds to pay off the balance due on the original second mortgage of $5,106.35 and marital debts of approximately $6,100. At that time, the home was assessed at $35,000. Mrs. Hysock, who has remarried, still resides in the house.

Mrs. Hysock's attorney drafted the separation agreement which the parties signed September 14, 1979. Debtor, who had not

seen the agreement until that day, had been drinking and was without legal representation when he signed the agreement. He testified that he thought the agreement was what it said, a property settlement. Mrs. Sharp testified that the husband's assumption of the second mortgage payments were to assist her in meeting living expenses.

The parties' intent as well as the nature of the obligation must be determined from the language and structure of the agreement and their respective financial situations at the time the agreement was signed. The introductory paragraph of Part II of the agreement indicates that its terms were to be a property settlement in lieu of, and in full discharge of, all claims for alimony or for allowances for support and maintenance for either of the parties. Sections (A), (B) and (C) gave custody of the children to the wife and provided for child support payments of $55 per week to be paid by the husband who, in addition, assumed responsibility for all medical and dental expenses of the children. He also agreed to provide hospitalization insurance for his wife until there was a final divorce. In Section (D), the husband agreed to assign all his right and interest in all furniture and furnishings of the marital domicile to the wife. The wife in Section (E) agreed to assign to the husband a 1978 Mercury Cougar. In Section (F), the husband agreed to convey all his interest in the marital home to his wife who then assumed liability for the first mortgage. In the same section, the husband agreed to assume liability for the payment of the second mortgage, making the payments to his wife in weekly installments of $52.75 ($211 per month) for the term of the mortgage (10 years—1989) or until the property was sold, whichever occurred first.

It is significant that although there are two subsections of Part II dealing with support and maintenance, debtor's obligation to assume the second mortgage is contained in a section wherein property is distributed to the wife. Moreover, since the obligation does not terminate on the death or remarriage of the obligee spouse nor expressly or inferably relates to living expenses, it is more indicative of a property settlement than support, alimony or maintenance. *See In re Beckwith,* 17 B.R. 816, 6 C.B.C.2d 97 (Bankr.N.D.Ohio 1982); *In re Taff,* 10 B.R. 101, 4 C.B.C.2d 65 (Bankr.D. Conn 1981).

The fact Mrs. Sharp did not report as income on her 1984 tax return the payments she received from debtor for the second mortgage also supports the proposition that the payments were part of a property settlement.

Standing alone, the designation given the obligation in the agreement is not dispositive of its nature, but the agreement, having been drafted by the wife's attorney and debtor having been without representation, must be strictly construed against the drafter. Thus, Mrs. Sharp cannot rely on the agreement as support for her contention that it was the parties' intent to provide support or maintenance through debtor's assumption of the second mortgage payment.

Nor does the parties' respective financial condition at the time the agreement was signed reflect that such payment was necessary to provide for the continuing needs of the family. Both were employed. She grossed $606 per month; he grossed $936 per month. She testified her net income was approximately $500. There was no testimony as to his net income. For purposes here, I will assume a net of $800 (this assumption is only $30 more than was being deducted from plaintiff's salary and in all likelihood favors plaintiff). Deducting from his net income and adding to her net income $55 per week child support, she would have $720 per month and he would have $580 per month. Any medical and dental expenses of the children would be charged against his net income per month.

Against her disposable income of $720, Mrs. Sharp listed the following monthly expenses:

| | |
|---|---|
| 1st mortgage payment | $184.00 |
| heat | 60.00 |
| electricity | 30.00 |
| phone | 20.00 |
| water | 17.00 |
| car | 30.00 |
| life insurance | 7.50 |
| groceries | 200.00 |
| | $498.50 |

These figures indicate Mrs. Sharp had $221.50 per month in excess of expenses. Therefore, the $211 per month for the second mortgage was not necessary to provide for the needs of the family.

Assuming for sake of argument only that the obligation was intended to provide support, it would be manifestly unreasonable in light of the following circumstances. Mrs. Sharp acquired a property assessed at $35,000. Even if we assume that the principal balance on the first mortgage had not been reduced and the balance due on the second mortgage was $11,000, she received for the benefit of herself and children at least $7,000 equity in the real estate plus all of the household furnishings and furniture as well as child support payments. Debtor received an automobile. One of the children now lives with him. Mrs. Sharp now has different employment and enjoys a better income. Both parties have remarried.

For the foregoing reasons, the court finds that debtor's assumption of the second mortgage payments was part of a property settlement and was not intended as support and maintenance. An order holding the obligation dischargeable is attached.