11 F.3d 394
 27 Fed.R.Serv.3d 1345, 24 Bankr.Ct.Dec. 1636,
Bankr. L. Rep. P 75,618
 In re JEWELCOR INCORPORATED; Jewelcor Jewelers and
Distributors, Inc.; Gruen Marketing Corporation; Osaka
Trading Company; Gruen Precision, Inc.; Showroom Realty
Co., Inc.; Catalog Realty Co., Inc.; S.H. Holdings, Inc.;
JC Acquisition Corporation; Just Watches, Ltd.; Robert J.
Tabakow, Inc.; Guildcraft Precision, Ltd.; Panther
Manufacturing, Ltd.; Lt, Inc.; JJ & D Realty Co., Inc., Debtors,
v.
ASIA COMMERCIAL COMPANY, LTD.
Panther Manufacturing, Ltd.; Gruen Marketing Corporation,
successor in interest to Acquisition Entity II
pursuant to the confirmed Debtors'
Amended Joint Plan of
Reorganization, Appellants.
 No. 93-7181.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 30, 1993.
Decided Dec. 1, 1993.
 
 Donald H. Brobst, Robert N. Gawlas, Jr. (argued), Rosenn, Jenkins & Greenwald, Wilkes-Barre, PA, for appellants.
 Alan J. Sorkowitz (argued), Breed, Abbott & Morgan, New York City, Marc W. Witzig, Harrisburg, PA, for appellee.
 Before: SCIRICA, ALITO and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 In this appeal from a final decision of the district court, we must decide whether the district court erred by dismissing a debtor's appeal from a bankruptcy court's order for failure to file a brief within 15 days of the entry of the appeal on the district court clerk's docket pursuant to Rule 8009(a)(1) of the Bankruptcy Rules when the district court clerk failed to give notice of docketing pursuant to Rule 8007(b).
 
 
 2
 Jurisdiction was proper in the district court pursuant to 28 U.S.C. Sec. 158(a). We have jurisdiction under 28 U.S.C. Sec. 158(d) and Sec. 1291. Appeal was timely filed under Rule 4(a) of the Federal Rules of Appellate Procedure.
 
 I.
 
 3
 The district court proceeding was an appeal from the bankruptcy court's final order directing the Debtors, Panther Manufacturing Limited and Gruen Marketing Corporation, (hereinafter "Debtors" or Appellants), to pay the claim of a creditor, Asia Commercial Company (hereinafter "Asia" or Appellee), as required under the Debtors' confirmed plan of reorganization. The bankruptcy court also denied a request for a civil contempt order against the Debtors for failing to obey a previous order of the bankruptcy court.
 
 
 4
 Although the adjudicative facts are somewhat limited to circumstances surrounding the docketing of the appeal in the district court clerk's office, we deem it necessary to set forth in some detail the proceedings in the bankruptcy court. The district court made reference to these circumstances as a prelude to its dismissing the Debtors' appeal for failure to prosecute under Rule 8009.
 
 
 5
 The Debtors filed a reorganization petition under Chapter 11 of the Bankruptcy Code on October 5, 1990. In March of 1991, the Debtors filed a proposed Amended Joint Plan of Reorganization (hereinafter "the Plan"). The Plan, which provided that general unsecured creditors were to receive 10 percent of allowed claims in a cash distribution and 65 percent in the form of a subordinated note, was subsequently confirmed by order of the bankruptcy court.
 
 
 6
 The Appellants, successors-in-interest to the original debtors, have continued to operate their business and manage their property as debtors-in-possession pursuant to the Plan. They are principally engaged in the importation, distribution and sale of watches.
 
 
 7
 Asia filed an unsecured claim against the Debtors in the bankruptcy court for $485,277.26. On October 29, 1991, Asia filed a motion in the bankruptcy court requesting an order requiring the Debtors to make the appropriate distribution to them as prescribed by the Plan. As of October 29, Asia had yet to receive its share of the distribution, while other creditors in the same class had been paid their cash and note distributions under the Plan. The Debtors filed no opposition to this motion.
 
 
 8
 On December 5, 1991, the bankruptcy court entered an order granting Asia's motion and directing the Debtors to make payment. No distribution was made nor was an appeal taken by the Debtors from the December 5 order. On January 24, 1992, Asia filed a second motion requesting the bankruptcy court to direct the Debtors to make payment under the Plan. Asia also sought to have the Debtors held in contempt of the December order.
 
 
 9
 In their answer and at the hearing on the second motion, the Debtors argued that the December order was a nullity for a variety of procedural and substantive reasons. Primarily, they alleged that their counsel had not received a copy of Asia's initial motion or notice of the subsequent hearing. The Debtors contended also that their refusal to pay Asia's claim was justifiable, because there was no deadline for payment of the claim set forth in the Plan or the December order. Finally, they claimed a potential set-off against Asia for alleged infringement of certain licenses and trademarks.
 
 
 10
 On November 2, 1992, the bankruptcy court issued an opinion and order rejecting the proffered defenses and again directing that payment be made. At that time, the court denied Asia's motion for contempt. In response to the Debtors' contention that there was no deadline for payment in the original order, the court noted:
 
 
 11
 The plain meaning of the language and the grammar of the order dictates that the bankruptcy court intended to have Asia's claim paid. This order did not contemplate that the claim was still disputed and that the dispute resolution provisions of the plan should be applied to Asia's claim at any time in the future when the debtors deemed fit to bring the matter before the Court for disposition.
 
 
 12
 App. at 94a.
 
 
 13
 Finally, on December 14, 1992 Asia filed a renewed motion for contempt because the Debtors had failed to comply with the November 2 order. After a hearing on the renewed motion, the court ordered the Debtors to pay Asia their portion of the cash distribution, $46,759.95, within ten days and thereafter a per diem of $200 per day as a sanction for late payment. The Debtors made the payment to Asia within 10 days. However, the Debtors still owe Asia a subordinated note equal to 65 percent of its outstanding claim.
 
 
 14
 In the meantime, on November 12, 1992 the Debtors filed a notice of appeal in the district court from the bankruptcy court's order of November 2. Their designation of record on appeal and statement of issues were filed on December 3, 1992. On December 24, 1992, the bankruptcy court clerk sent all parties a copy of her letter to the district court clerk transmitting all papers for the appeal.
 
 
 15
 The foregoing is merely prefatory to the action taken on December 28, 1992, when the district court clerk docketed the appeal. It is not controverted that the district court clerk failed to send notice to the parties of the date on which the appeal was docketed. The district court dismissed sua sponte the appeal on January 22, 1993 because the Debtors had failed to file their appellate brief within 15 days of December 28. The Debtors submitted their brief to the district court on February 1, 1993 with their Motion for Reconsideration of the January 22 order.
 
 II.
 
 16
 In entering the order of dismissal, the district court stated:
 
 
 17
 We are not unmindful of the Editor's Comments (1983) to Rule 8009, which note that dismissal for noncompliance is a severe remedy and should be used only on rare occasions. Our review of the documents submitted in conjunction with this appeal, and particularly the Order of November 2, 1992, indicate that this is one of those rare occasions.... Under [the Plan], Asia was to receive certain distributions and notes from [Debtors]. After almost two years, Asia has not received any such distributions, and [Debtors have] engaged in a plethora of tactics to avoid making such distributions. The Bankruptcy Court, after careful consideration, ordered that the distributions be made. We will not allow [Debtors] to use this appeal, and specifically its untimely filing of the required briefs, to delay the distribution any longer.
 
 
 18
 Accordingly, [Debtors'] appeal will be dismissed for failure to prosecute under Rule 8009.
 
 
 19
 App. at 99a (emphasis added). Rule 8009(a) provides in relevant part:
 
 
 20
 Unless the district court or the bankruptcy appellate panel by local rule or by order excuses the filing of briefs or specifies different time limits:
 
 
 21
 (1) The appellant shall serve and file a brief within 15 days after entry of the appeal on the docket pursuant to Rule 8007.
 
 
 22
 11 U.S.C. Rule 8009(a).
 
 
 23
 Rule 8007(b) establishes the procedure for docketing of an appeal in the district court:
 
 
 24
 When the record is complete for purposes of appeal, the clerk of the bankruptcy court shall transmit it forthwith to the clerk of the district court or the clerk of the bankruptcy appellate panel.... On receipt of the transmission the clerk of the district court or the clerk of the bankruptcy appellate panel shall enter the appeal in the docket and give notice promptly to all parties to the judgment, order, or decree appealed from of the date on which the appeal was docketed.
 
 
 25
 11 U.S.C. Rule 8007(b) (emphasis added).
 
 
 26
 On appeal, the Debtors argue that the district court erred in dismissing their appeal, because the district court clerk failed to notify them that the appeal had been docketed pursuant to Rule 8007(b). They assert that the 15-day time period cannot begin to run until the district court clerk provides notice of the docketing date. In essence, they argue that because the docketing was not in compliance with the docketing rule, the 15-day period in which they were to serve and file their brief had never commenced. Accordingly, Debtors contend that their brief was timely filed.
 
 
 27
 The Appellee responds that the district court did not err, because the time requirement of Rule 8009 is unambiguous in its 15-day requirement, to wit, the penalty for failure to abide by the rule is dismissal of the appeal. Asia argues that such a construction is consistent with the bankruptcy rules which emphasize the expeditious nature of appeals and serve to speed the administration of bankruptcy estates. The Appellee notes that no case law supports the Debtors' contention that the failure of the clerk to notify the parties in some way excuses the tardy filing of an appellate brief.
 
 
 28
 In an alternative argument, the Appellee contends that, although the district court clerk did not specifically notify the Debtors that the appeal had been docketed, the Debtors had actual notice. According to the Appellee, the letter from the bankruptcy court clerk notifying the parties that the record on appeal had been transmitted to the district court for docketing constituted actual notice of the docketing. The Appellants respond that the bankruptcy clerk's letter "is not equivalent to the docketing notice required to be sent by the district court." Reply Brief at 2.
 
 
 29
 The plenary standard of review governs questions of law, including the district court's interpretation and application of the law. Tudor Dev. Group, Inc. v. United States Fidelity & Guar. Co., 968 F.2d 357 (3d Cir.1992). We review a dismissal for failure to prosecute only for an abuse of discretion, but the district court must have considered less severe sanctions. Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339, 342 (3d Cir.1982); see also In re Braniff Airways, Inc., 774 F.2d 1303, 1305 (5th Cir.1985).
 
 III.
 
 30
 The Appellee relies on In re Quevedo, 35 B.R. 117 (D.P.R.1983), to support its position. In Quevedo, 35 B.R. at 119, the court concluded:
 
 
 31
 In this case, debtor-appellant's duty under Rule 8009(a)(1) to submit a brief within the specified time limit did not, as a matter of law and as required by Rule 9006(f), commence as of the time he received service of notice by mail but rather as of the time his request for appeal was entered into the docket. See Rule 8009(a)(1).
 
 
 32
 The court emphasized that the time limits were intended to provide for an "expeditious resolution of bankruptcy proceedings." Id. at 120. But in Quevedo, the appellant-debtor attempted to argue that the 15-day time period should commence as of the time he received the service of notice in the mail. Clearly, the rule provides that the period shall begin as of the time the appeal was docketed. In the instant case, however, no notice of when the appeal had been docketed was given at all. The question that we must address is whether a lack of notice excuses filing a brief within 15 days. This question was not addressed in Quevedo.
 
 
 33
 Although relied upon by the Appellee, Quevedo lends some support to the Debtors' position, because the court determined that the time period begins to run as of the date notice is sent to the debtor:
 
 
 34
 Since Rule 8007 requires that notice be sent to all parties in interest of the date the appeal was docketed, and since the notice which was sent to debtor-appellant was dated September 29, 1983, we assume that the fifteen days available to debtor-appellant began to run as of that date.
 
 
 35
 Id.
 
 A.
 
 36
 In order to file a bankruptcy appeal, the parties and various court officials must carry out certain duties prescribed by the bankruptcy rules. Initially, the notice of appeal is filed in the office of the bankruptcy court clerk, not with the district court clerk. Within 10 days of filing the notice of appeal, the appellant must provide the bankruptcy court clerk with certain items to be included in the appellate record. See Rule 8006 ("Within 10 days after filing the notice of appeal as provided by Rule 8001(a) ... the appellant shall file with the clerk of the bankruptcy court and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented."). Thereafter, the bankruptcy clerk must transmit a copy of the record to the district court. All of this must be done prior to the docketing of the appeal with the district court.
 
 
 37
 The 15-day period is triggered not by the letter of transmittal from the bankruptcy court clerk, but the docketing and sending of notice by the district court clerk. Without notice from the clerk of the district court, an appellant cannot be certain of the precise date on which the appeal was docketed. Given the extremely restricted time period in which the appellant is to file the brief, notice to the parties from the district court clerk is critical.
 
 
 38
 Where the rules impose such a tight limitations period and the sanction for failure to meet a deadline is dismissal of the appeal, we must consider the actions of not only the parties, but also designated court officials, when determining whether the critical limitations period has lapsed.
 
 
 39
 In drafting Rule 8009(a)(1), the Advisory Committee on Bankruptcy Rules tied the commencement of the brief-filing limitations period to the actions of the district court clerk, to wit, "within 15 days after entry of the appeal on the docket pursuant to Rule 8007." To be sure, the drafters of the rule could have started the time-clock ticking with the transmission of the record by the bankruptcy court clerk, but they did not. Rather, the rule starts the time period with the twin actions of the district court clerk prescribed in Rule 8007: (1) "[T]he clerk ... shall enter the appeal in the docket and [ (2) ] give notice promptly to all parties." With respect to notice, the advisory committee tracked Rule 12(b) of the Federal Rules of Appellate Procedure: "Upon receipt of the record ... the clerk of the court of appeals shall file it and shall immediately give notice to all parties of the date on which it was filed."[1] The notice requirement is an integral part of limitations periods found throughout our rules of procedure and the bankruptcy code. Rule 8007 is no exception. As we will not condone an appellant's dilatory tactics in filing an appeal, we will not hold an appellant accountable for a third party's oversight that was beyond the appellant's knowledge and control.
 
 B.
 
 40
 The starting point for construing a statute or rule of procedure is the language of the statute or rule itself. Rule 8009 specifically provides that the 15 days will run "after entry of the appeal on the docket pursuant to Rule 8007." Without the mandatory notice, a case has not been docketed "pursuant to Rule 8007." Notice to the parties is an essential part of the docketing process and is a condition precedent to the commencement of the brief-filing limitations period. The obligation to file the brief does not mature until the condition is satisfied. Here, the critical condition had not been satisfied.
 
 IV.
 
 41
 This too must be said. In examining the record and the preliminary comments of the district judge prior to dismissing the appeal for failure to file the briefs within 15 days, we see a panorama of foot-dragging by the Debtors. We recognize the frustration of the district court when it noted that:
 
 
 42
 Under [the Plan], Asia was to receive certain distributions and notes from [Debtors]. After almost two years, Asia has not received any such distributions, and [Debtors have] engaged in a plethora of tactics to avoid making such distributions.
 
 
 43
 App. at 99a. But these are considerations that are relevant only when the district court considers the appeal on the merits. Here, the court did not consider the appeal on the merits; instead it ruled that the Appellants had not respected the briefing timetable established by the rules. The court interpreted only the bankruptcy rules and did not address the merits of the case.
 
 
 44
 Accordingly, whether viewed as an error of law or abuse of discretion, it was not appropriate for the district court to dismiss the Debtors' appeal for failure to file a timely brief when the Debtors had not been given notice that the appeal had been docketed in the district court. The Debtors did not fail to comply with Rule 8009(a), because the limitations clock did not start ticking until the clerk of the district court gave notice of the docketing as required by Rule 8007(b).
 
 
 45
 The judgment of the district court will be reversed.
 
 
 46
 Each party is to pay its own costs.
 
 
 
 [1]
 The writer of this opinion was chairman of the Advisory Committee on Bankruptcy Rules at the time the relevant rules were drafted and subsequently enacted