## In re Dale Eldon WILEY, Doris Jean Wiley, Debtors.

### No. C 94–4116.

United States District Court, N.D. Iowa, Western Division.

July 31, 1995.

A. Frank Baron of Baron, Sar, Goodwin, Gill, Lohr & Horak, Sioux City, IA, for debtor Doris Jean Wiley.

Donald H. Molstad, Trustee, Sioux City, IA.

MEMORANDUM OPINION AND ORDER ON PETITION FOR REVIEW OF THE DECISION OF THE BANK-RUPTCY COURT

BENNETT, District Judge.

## TABLE OF CONTENTS

I. BACKGROUND ...................................................761
II. LEGAL ANALYSIS ..............................................762
   A. Want Of Prosecution ....................................762
   B. Standard Of Review .....................................764
   C. Preservation Of Issues For Appeal ......................764
   D. Qualification Of Annuity For Exemption .................764
   E. Extent Of Exemption ...................................766
III. CONCLUSION .................................................767

In this appeal from a decision of the bankruptcy court for the Northern District of Iowa, the debtor asserts error in the bankruptcy court judge's determination that an annuity in favor of the debtor as a settlement for a personal injury lawsuit was an asset of the estate and the bankruptcy court judge's further determination that only ten percent of the annuity payments is exempt under Iowa Code § 627.6(8)(e), which provides an exemption for payments "on account of" disability. Finding no error, this court affirms.

## I. BACKGROUND

Debtors Doris and Dale Wiley filed a *pro se* Chapter 7 petition in bankruptcy on May 5, 1994. Among the items listed on their schedule of personal property was a "settlement from accident" as Doris Wiley's property. The Wileys claimed the property was exempt under Iowa Code § 627.6(8)(e). On or about June 20, 1994, the Trustee filed an objection to this exemption on the ground that the accident settlement was not exempt under the Iowa Code. The Wileys, by this time represented by counsel, resisted the objection on July 6, 1994. In a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), the bankruptcy court held a hearing on the objection to exemption on August 23, 1994, at which exhibits, including the settlement agreement and resulting annuity policy, were

presented and testimony, including that of Doris Wiley, was heard.

Following the hearing, the bankruptcy court entered a decision on September 20, 1994. It is from this order that debtor Doris Wiley appeals. In the September 20, 1994, order, the bankruptcy court made the following findings of fact of interest here. The "accident settlement" listed by the Wileys in their schedule of personal property was a settlement with Farm Bureau Mutual Insurance Company for injuries suffered by Doris Wiley in a motor vehicle accident on July 31, 1983. Wiley was fifteen years old at the time of the accident. Wiley's injuries in the accident included a broken ankle, broken femur, third-degree burns, head concussion, and whiplash. In settlement of Wiley's claim for damages as the result of the accident,[1] Farm Bureau purchased a single premium annuity policy with guaranteed payments as follows:

   $14,000.00 payable on June 29, 1993
   $25,000.00 payable on June 29, 1998
   $35,000.00 payable on June 29, 2003

Under the terms of the policy, Farm Bureau is the owner, and Doris Wiley is the annuitant and payee. Furthermore, under the terms of the settlement agreement, Farm Bureau is required to "retain ownership" of the policy. Farm Bureau did not reserve the right to make payments to any other payee, and therefore is precluded, by the terms of the policy, from doing so.

---

1. Doris Wiley's mother obtained the settlement on behalf of Doris, who was a minor at the time of the accident.

The bankruptcy court also found that, at the time the settlement agreement was made, Doris Wiley had been told by her doctors that she would have long-term physical problems. Since that time, Wiley has had physical examinations revealing continuing problems from her injuries. These problems include difficulties with lifting and problems with standing or walking for extended periods of time, which can result in discomfort and limping. Wiley expects these disabilities to be permanent. However, the bankruptcy court found that Wiley had presented little evidence to enable the court to evaluate Wiley's possible loss of earning capacity as the result of her injuries. The court found that Wiley had obtained degrees in accounting and business from a two-year college and had been working as a clerk at Iowa Beef Processors (IBP) for the past five and one-half years.

The bankruptcy court concluded that the annuity in question constitutes "rights in payment" as required for exemption under Iowa Code § 627.6(8)(e). The court also concluded that the annuity was "on account of" disability, at least to some extent, as required by the Iowa exemption provision.[2] The court concluded, however, that "disability" means different things in different contexts. The court therefore concluded that the exemption in § 627.6(8)(e) "is intended to include payments for loss of earning capacity, not for loss of bodily function." The bankruptcy court cited as supporting this conclusion H.R.Rep. No. 595, 95th Cong., 1st Sess. 361–62 U.S.Code Cong. & Admin.News 1978, p. 5787 (1977), which discusses 11 U.S.C. § 522(d)(10) as providing exemptions that are "akin to future earning." The bankruptcy court noted, however, that loss of bodily function may be evidence of lost earning capacity.

The bankruptcy court found that little evidence had been presented, none of it medical evidence, from which an inference could be drawn of lessened earning capacity created by Wiley's loss of physical capacity. The court determined that it would be "unfair" to decide the exemption issue on an "all-or-nothing basis" in light of the likelihood that other components besides loss of earning capacity had figured in the settlement agreement. The court identified these other components as including future medical expenses, past and future pain and suffering, and past and future loss of bodily function. Recognizing a dearth of evidence presented by the parties, the court found that ten percent of Wiley's annuity rights were "on account of disability" and exempted that portion of Doris Wiley's rights in the annuity payments pursuant to Iowa Code § 627.6(8)(e).[3]

Doris Wiley, through counsel, filed a notice of appeal of the bankruptcy court's September 20, 1994, order on September 28, 1994, and a notice of filing of notice of appeal on September 29, 1994. Wiley's designation of record and statement of issues on appeal was subsequently filed on October 6, 1994. The issues presented on appeal are identified in Wiley's October 6, 1994, filing as follows:

A. Are the payments to be received pursuant to the annuity an asset of the estate?

B. Is Appellant's interest in the annuity payments exempt pursuant to Chapter 627.6(e) [sic] of the Code of Iowa?

The Clerk of the Bankruptcy Court filed a Certificate On Appeal with this court on December 14, 1994. That same day the Clerk of this court filed a Notice Of Petition For Review In Bankruptcy notifying the parties of the filing of the Certificate On Appeal and the applicable rules establishing the deadlines for briefing of the appeal. None of the parties subsequently filed any briefs or other materials pertaining to this appeal.

## II. LEGAL ANALYSIS

### A. Want Of Prosecution

The Notice Of Petition For Review In Bankruptcy in this case was docketed by the Clerk of the District Court on December 14, 1994. That Notice states that it provides

---

2. The court rejected, as without merit, Wiley's contention that the annuity was "on account of" age, an issue Wiley does not appeal here.

3. The court found no evidence that Dale Wiley could claim an exemption in the annuity. Dale Wiley has not appealed that determination here.

notice pursuant to Local Rule 34 (now N.D.Iowa L.R. 35) and Bankruptcy Rule 8009. A copy of N.D.Iowa L.R. 34 (now 35) was attached. The local rule affirms the applicability of "the official rules and forms of practice and procedure in bankruptcy (Bankruptcy Rules 801, et seq.)." N.D.Iowa L.R. 35 (formerly Rule 34). The local rule otherwise specifies only the length of briefs and the sanction of dismissal for failure to pay fees. *Id.*

■ However, Bankruptcy Rule 8009 specifies the due dates for briefs on appeal from the bankruptcy court, in pertinent part, as follows:

> Unless the district court or the bankruptcy appellate panel by local rule or by order excuses the filing of briefs or specifies different time limits:
>
> (1) The appellant shall serve and file a brief within 15 days after entry of the appeal on the docket pursuant to Rule 8007.
>
> (2) The appellee shall serve and file a brief within 15 days after service of the brief of appellant....
>
> (3) The appellant may serve and file a reply brief within 10 days after service of the brief of the appellee.... No further briefs may be filed except with leave of the district court or the bankruptcy appellate panel.

Bankruptcy Rule 8009(a). The briefing schedule identified in this rule is not triggered by docketing of the certificate of appeal by the bankruptcy clerk, or transmittal of the record from the bankruptcy clerk, nor by receipt of the notice from the clerk of the district court by the parties, but by "the docketing and sending of notice by the *district* court clerk." *Jewelcor Inc. v. Asia Commercial Co., Ltd.,* 11 F.3d 394, 397–98 (3d Cir.1993) (emphasis in the original). The record in this case shows that the Clerk of the District Court filed and sent the notice to the parties on December 14, 1994,[4] thereby triggering the briefing schedule. Although the bankruptcy rule provides for alteration of the briefing schedule by local rule or court order, neither the local rule nor any court order altered the briefing schedule in this case. Thus, under the applicable rules identified in the notice from the clerk of the district court, appellant's brief was due December 29, 1994, appellee's brief was due January 13, 1995, and appellant's reply brief was due January 23, 1995. However, no briefs were filed by either party.

■ The purpose of the briefing schedule in Bankruptcy Rule 8009 is to provide for the "expeditious resolution of bankruptcy proceedings." *Jewelcor,* 11 F.3d at 397. It is plain that the district court may dismiss a bankruptcy appeal for want of prosecution when the appellant fails to file or to timely file a brief as required by Bankruptcy Rule 8009. *See, e.g., Nielsen v. Price,* 17 F.3d 1276 (10th Cir.1994) (dismissal of *pro se* appeal for failure of appellant to file timely designation of record or brief was not abuse of discretion even though debtor did not have an attorney's assistance in preparing the appeal); *In re Tampa Chain Co., Inc.,* 835 F.2d 54 (2d Cir.1987) (no abuse of discretion in dismissal for want of prosecution where defendants failed to file any brief for approximately seven months and district court asked for and received no explanation for delay); *Matter of Braniff Airways, Inc.,* 774 F.2d 1303 (5th Cir.1985) (dismissal no abuse of discretion where appellant's brief was not filed within fifteen days and no brief had been filed 19½ months later when appeal was dismissed); *but see Jewelcor,* 11 F.3d at 398 (dismissal for failure to file brief was not proper where appellant received no notice that appeal had been docketed in the district court); *In re Beverly Mfg. Corp.,* 778 F.2d 666 (11th Cir.1985) (dismissal was improper where delayed filing of brief was only necessary step in prosecution of appeal not fulfilled, and filing of brief depended on delayed processing of record). However, because this court finds the decision of the bankruptcy court to be without error, it will not rest its affirmance of the bankruptcy court's deci-

---

4. The December 14, 1994, Notice Of Petition For Review In Bankruptcy filed by the clerk of the district court bears a certificate of service above the initials of the responsible deputy clerk indicating that copies of the notice were mailed by regular mail on December 14, 1994, to counsel for the Wileys, the Trustee, and counsel for unknown creditors.

sion and dismissal of the appeal solely on the ground that the appellant failed to file the required brief.

## B. Standard Of Review

■ The court therefore turns to the standard of review applicable to the appeal of the decision by the bankruptcy court. As recent decisions demonstrate, the Eighth Circuit Court of Appeals has stated that standard of review with remarkable consistency and succinctness. In reviewing the district court's disposition of the appeal, the court of appeals, as a second court of appeals, "sit[s] in the same position as did the district court." *See, e.g., Affeldt v. Westbrooke Condominium Assoc.*, 60 F.3d 1292, 1294–95 (8th Cir.1995); *In re Kjellsen*, 53 F.3d 944, 946 (8th Cir. 1995); *In re Foust*, 52 F.3d 766, 768 (8th Cir.1995); *In re Montgomery*, 37 F.3d 413, 414–15 (8th Cir.1994); *In re Wagner*, 36 F.3d 723, 726 (8th Cir.1994); *In re Jones*, 31 F.3d 659, 661 (8th Cir.1994). Thus, both appellate courts review the bankruptcy court's conclusions of law *de novo*, and its findings of fact for clear error. *See, e.g., Affeldt*, 60 F.3d at 1294–95 (question of law only presented, so review was *de novo* ); *In re Kjellsen*, 53 F.3d at 946; *In re Foust*, 52 F.3d at 768; *Harstad v. First Am. Bank*, 39 F.3d 898, 901 (8th Cir.1994) (review of conclusion of law is *de novo* ); *In re Montgomery*, 37 F.3d at 414–15; *In re Wagner*, 36 F.3d at 726; *In re Jones*, 31 F.3d at 661. With these standards in mind, the court turns to review of the bankruptcy court's decision in this case.

## C. Preservation Of Issues For Appeal

Although Wiley has asserted two contentions on appeal here, it is not at all clear from the record that she argued or preserved as error the first issue presented, whether the annuity was an asset of the estate. There is some uncertainty about what conduct by the appellant is sufficient to preserve error for appellate review of a bankruptcy court order. *Compare In re McLean Indus., Inc.*, 30 F.3d 385 (2d Cir.1994) (repeated

assertion of untimeliness of claim was sufficient to preserve error of denial of statute of limitations defense, even though appellant never precisely formulated its timeliness defense as based on a statute of limitations); *with Matter of James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir.1992) ("insufficiently developed" argument or "skeletal argument" does not preserve issue for review on appeal from bankruptcy court's decision).[5] However, for the same reason the court will not dismiss this appeal for failure to file briefs, the correctness of the decision of the bankruptcy court, the court will entertain the question of whether or not the annuity here was an asset of the bankruptcy estate.

The court's consideration of this issue is also proper, because implicit within the bankruptcy court's decision that the annuity here was partially exempt is its determination that the annuity was an asset of the estate:

[D]ecisions about the status of exempt property can and frequently do determine the entire course of the bankruptcy proceeding because they involve disputes over what belongs in the bankrupt estate.... [E]ven though the exemption decision is technically interlocutory, it is frequently the final resolution of the parties' rights for practical purposes ... [A] decision that property is exempt could deplete the potential estate to such a degree that creditors would decline to participate further in the proceeding.... On the other hand, a decision that the property is not exempt would cause title to such property to vest in the trustee during the pendency of the action with all the attendant consequences of vesting.

*In re Huebner*, 986 F.2d 1222, 1223–24 (8th Cir.1993) (quoting, with editorial deletions above, *In re Barker*, 768 F.2d 191, 193–94 (7th Cir.1985)). The court will therefore consider both issues Wiley has stated for appeal.

## D. Qualification Of Annuity For Exemption

■ Pursuant to 11 U.S.C. § 541, property of the debtor's estate is broadly defined to include all of the debtor's interests in proper-

---

5. In this case, however, there was neither "skeletal" briefing of the issue urged on appeal nor

failure of precise assertion of the particular issue, but a complete failure to brief the issue at all.

ty. 11 U.S.C. § 541; *In re Caslavka,* 179 B.R. 141, 143 (N.D.Iowa 1995). Although here the annuity itself is owned by Farm Bureau here, Wiley has an "interest in," in fact an irrevocable right to, the payments from the annuity under the terms of that annuity, because, as the court noted above, Farm Bureau did not reserve the right to change the payee. Thus, the payments, unless otherwise exempt, are property of the bankruptcy estate.

■ Under 11 U.S.C. § 522(b), a debtor may choose between the federal exemptions provided by § 522(d) and those provided under state law, unless state law "vetoes" the debtor's option to choose the federal exemptions. *In re Huebner,* 986 F.2d at 1224. Iowa contains such a "veto," because it does not allow debtors to elect the federal exemptions. *Id.* In *In re Huebner,* the Eighth Circuit Court of Appeals considered the exemption provided by Iowa Code § 627.6(8)(e) for certain annuities:

> Iowa Code § 627.6(8)(e) provides an exemption for "[t]he debtor's rights in ... [a] payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service....
>
> In § 627.6(8)(e), the Iowa Legislature has limited its exemption to "rights *in* " an annuity *payment.* Unlike other states, such as California and Tennessee, Iowa has no statute granting an exemption for all or any part of the undistributed corpus of an annuity contract.

*Id.* (emphasis in the original; footnote omitted).[6] Wiley asserts that the bankruptcy court incorrectly concluded that the annuity here provided only in part for payment on account of disability. Wiley asserts that the annuity should have been held exempt in its entirety.[7]

In light of the language of § 627.6(8)(e), it is plain, as the bankruptcy court stated, that "[i]f the annuity payments were intended to compensate for the disability, ... the annuity payments would be 'on account of' disability," and therefore exempt under § 627.6(8)(e). The troubling question for this court, as for the bankruptcy court, is what does "payments on account of disability" mean in the exemption?

The bankruptcy court determined that in a number of contexts, "disability" *means* "loss of earning capacity," not "loss of bodily function." The bankruptcy court then concluded from considering the other types of property exempted by § 627.6(8) that § 627.6(8)(e) "is intended to include payments for loss of earning capacity, not for loss of bodily function." This court will examine what "payments on account of disability" in annuity contracts compensate and for what those payments are substitutes to discover what it is § 627.6(8)(e) was intended to exempt. Federal courts of this state have held that the purpose of the exemption provided by § 627.6(8)(e) is "to protect payments which function as wage substitutes ... to support the basic requirements of life at a time when the debtor's earning capacity is limited." *In re Caslavka,* 179 B.R. at 143; *In re Pettit,* 55 B.R. 394, 398 (Bankr.S.D.Iowa), *aff'd,* 57 B.R. 362 (S.D.Iowa 1985). The analogous federal exemption, 11 U.S.C. § 522(d)(10), provides exemption for payments that are "akin to future earnings." H.R.Rep. No. 595, 95th Cong., 1st Sess. 361–62 (1977). Also, Iowa law distinguishes between loss of bodily function and loss of earning capacity, compensating for each separately in personal injury awards, *see, e.g., Brant v. Bockholt,* 532 N.W.2d 801, 803 (Iowa 1995) (identifying separate elements of damages in personal injury suit); *Weems v. Hy–Vee Food Stores, Inc.,* 526 N.W.2d 571, 572 (Iowa Ct.App.1995) (slip

---

6. Had the settlement here not been coincidentally structured as an annuity, it is likely that the court would be considering a similar exemption provided by Iowa Code § 627.6(8)(c), which provides for exemption of a "disability benefit." *In re Buchholz,* 144 B.R. 443, 444 (N.D.Iowa 1992) (personal injury settlement from automobile accident asserted as exemption under this provision of the Iowa Code, and court considered an analogy between provision and the federal exemption

for payments "on account of personal bodily injury" in 11 U.S.C. § 522(d)(11)(D)).

7. Because no briefs have been filed on this appeal, the court draws its conclusions about what it is Wiley asserts from her statement of the issues on appeal, her designation of the entirety of the annuity payments as exempt, and her resistance to the trustee's objection to exemption.

and fall damages included both loss of earnings and loss of "full body"), but compensating only for loss of earnings in workers compensation awards, although the analysis in workers compensation cases uses loss of bodily function to assist in the determination of loss of future earnings. *See, e.g., Second Injury Fund v. Bergeson,* 526 N.W.2d 543, 548 (Iowa 1995) (workers compensation compensates for loss of earning capacity); *Gilleland v. Armstrong Rubber Co.,* 524 N.W.2d 404, 406 (Iowa 1994) (damages in workers compensation case are for loss of earnings in a non-scheduled injury case; loss of earnings are not available as damages in a scheduled injury case, which instead allows only a specified sum in compensation, but the purpose of the distinction is to provide certainty of compensation without controversies in the case of a scheduled injury, not to bar recovery for loss of earnings). What is protected by a disability insurance policy or annuity is loss of earning capacity. *Kantor v. New York Life Ins. Co.,* 219 Iowa 1005, 258 N.W. 759, 760 (1935). The same can be said of Supplemental Security Income benefits for disabled persons under the social security scheme. *See, e.g., Brown v. Heckler,* 786 F.2d 870, 871 & n. 20 (8th Cir.1986) (SSI benefits for disability are not available unless the disability prevents the applicant from working). The exemption of payments "on account of disability" in § 627.6(8)(e) is particularly for those payments that are provided by insurance or similar schemes, and those schemes make payments that substitute for lost earnings. *Accord In re Caslavka,* 179 B.R. at 143; *In re Pettit,* 55 B.R. at 398. Upon *de novo* review, therefore, this court agrees with the bankruptcy court that what is exempt under § 627.6(8)(e) are payments "on account of disability" that compensate for the loss of earnings resulting from the loss or impairment of bodily function.

### E. Extent Of Exemption

■ The court turns next to the question here of the extent of the exemption provided by Iowa Code § 627.6(8)(e). The bankruptcy court's determination of the extent of the exemption is a mixed question of fact and law, involving both interpretation of the parties' intent as to the meaning of the settlement agreement, and a factual question of what percentage of the annuity payments can be allocated to loss of earning capacity. Although the court recognizes that exemptions should be liberally construed in favor of the debtor, *In re Caslavka,* 179 B.R. at 143, the court concludes upon *de novo* review, that not all of the annuity payment is "on account of" Wiley's disability. Furthermore, the bankruptcy court's factual finding that the exemption here is only ten percent of those payments was not clearly erroneous.

■ The settlement agreement giving rise to the annuity here demonstrates that the parties intended that the annuity compensate more than just Wiley's possible loss of earning capacity. It provided that Farm Bureau "shall be released and discharged from *any and all* claims arising under [its insurance policy] for and on account of *any* loss or damage sustained by reason of [the] accident" in which Wiley was injured. Settlement Agreement, Exhibit 2 (emphasis added). A number of elements of damages for which the settlement agreement therefore provided compensation would include those recognized under Iowa law for such personal injury claims, including past and future loss of bodily function, loss of past and future income, pain and suffering, and past and future medical expenses. *See, e.g., Brant,* 532 N.W.2d at 803; *Weems,* 526 N.W.2d at 572. This interpretation of the annuity payments as compensating for a number of different elements of damages, including loss of earnings, is appropriate, because Iowa Code § 627.6(8)(e) specifically provides that "[a] payment *or a portion of a payment*" under a qualifying contract may be exempt. Thus, the exemption need not be "all-or-nothing."

■ This court agrees with the bankruptcy court's observation, however, that the factual record provides little hint of the relative percentage of the payments that is intended to compensate for loss of earnings. Reviewing the evidence, which indicates that Wiley has not been prevented from pursuing her education or from getting and maintaining employment, suggests that Wiley has *in fact* suffered little loss of earning as the result of her injuries. The only evidence

presented, by Wiley's own testimony, was that *at the time of her injuries,* her doctors anticipated that she would have some permanent loss of function of the body, but little in the loss of function identified suggests a likely significant loss of earning capacity. Therefore, it was not clearly erroneous for the bankruptcy court to conclude that loss of earnings figured only to a small degree into determination of the settlement amount. It is irrelevant, based on the applicable standard of review for this factual determination, whether this court would have chosen a larger or smaller percentage of the payments as representing compensation for loss of future earnings. *In re Kjellsen,* 53 F.3d at 946 (review of factual determinations is for clear error only); *In re Foust,* 52 F.3d at 768 (same); *In re Montgomery,* 37 F.3d at 414–15 (same); *In re Wagner,* 36 F.3d at 726 (same); *In re Jones,* 31 F.3d at 661 (same). This court must therefore affirm the bankruptcy court's conclusions on this and all other issues presented for review.

### III.   CONCLUSION

Upon *de novo* review of the bankruptcy court's legal conclusions, this court finds no error. The annuity payments under the settlement agreement were property in the bankruptcy estate. The annuity payments were property in which Wiley had not only an interest, but an irrevocable right, and, as such, they come within the meaning of 11 U.S.C. § 541. However, some portion of those payments is exempt pursuant to Iowa Code § 627.6(8)(e), because they are payments "on account of" disability, and, more specifically, payments akin to or substituting for loss of earnings as the result of a loss or impairment of bodily function. The court also concludes that loss of earnings was encompassed, along with a number of other elements of damages, in the settlement agreement that gave rise to the annuity at issue here. Damages for personal injuries under Iowa law include a number of elements, and the settlement agreement purported to resolve any and all claims for any damages. Furthermore, the extent of the exemption for these payments is not necessarily an "all-or-nothing" proposition, be-

cause the exemption statute itself states that all or a portion of payments may be exempt.

This court concludes that the bankruptcy court's factual conclusion, that only ten percent of the annuity payments is exempt as representing payments on account of disability within the meaning of the exemption, is not clearly erroneous. There was a dearth of evidence to indicate that the parties considered compensation for future loss of earnings was a significant or substantial part of the settlement amount. The evidence presented suggested that, at the time of the settlement, it was believed Wiley would suffer some permanent loss of bodily function, but the loss of bodily function contemplated did not suggest significant loss of earning capacity would result.

The September 20, 1994, decision of the bankruptcy court regarding partial exemption of the annuity payments is therefore affirmed.

**IT IS SO ORDERED.**