**Tosin ADEGBUJI, Appellant**

v.

**MIDDLESEX COUNTY; Michael T. Abode, Warden; Officer Johnston; Nine Other Unknown Officers Named Officers; Sergeant LaSalla; Middlesex County Corrections Commissioner; Gwen Scruzz; Sandra Vargas; Dr. Rajesh Wadhwa; Contract Pharmacy Services; C.F.G. Health Systems Inc.; Anthony Russo; Jay Botnick; Thomas Johnston; Michael Esposito; Sgt. Pedro Delgado; Acting Warden Ed-**

## 878

mond Cicchi; Mark Powell; Wood; Lieutenant Gilrain; Board of Freeholder; Middlesex County Adult Correction Center; Department of Correction.

No. 08–2190.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 8, 2009.

Opinion filed: Oct. 9, 2009.

Tosin Adegbuji, Lawrenceville, GA, pro se.

Bruce D. Ettman, Esq., Wolff & Samson, West Orange, NJ, Craig L. Corson, Esq., Hoagland, Longo, Moran, Dunst & Doukas, New Brunswick, NJ, Clark W. Convery, Esq., Convery, Convery & Shihar, Edison, NJ, for Appellees.

Before: FISHER, JORDAN and VAN ANTWERPEN, Circuit Judges.

## OPINION

PER CURIAM.

Appellant Tosin Adegbuji, proceeding *pro se*, filed a civil rights lawsuit against various corrections and medical defendants affiliated with the Middlesex County Adult Correctional Center ("MCACC") in April 2003. The complaint was based on events occurring at MCACC while Appellant was being held there as an Immigration and Naturalization Service ("INS") detainee.[1] While the underlying proceedings were pending, Appellant was granted withholding of removal to Nigeria but denied asylum. He was subsequently removed to the United Kingdom, where he remains today. In an opinion and order dated September 28, 2006, 2006 WL 2806289, the District Court entered summary judgment in favor of all defendants on all causes of action except: (1) against Defendants Johnson and Botnick, on the charge that they used excessive force in restraining Appellant while locking him in his cell, and (2) against Defendant LaSalla on the charge that he retaliated against Appellant and violated his procedural due process rights.

---

1. Effective March 1, 2004, the INS was abolished and its functions transferred to the Department of Homeland Security ("DHS").

The Court then set a trial date of December 5, 2006 for all remaining issues.

On November 20, 2006, Appellant filed a motion in the District Court requesting a "90–day extension of time within which to begin the trial" due to his inability to enter the country without prior permission from the Department of Homeland Security. Appellant alleged that his application for permission to temporarily enter the United States had been filed on November 5, 2006 and that he had been appointed counsel in connection with his appeal of the INS's removal order and was awaiting a date for oral argument before the Third Circuit Court of Appeals. In the alternative, Appellant requested that the Court appoint counsel to represent him at trial. On November 27, 2006, the District Court denied Appellant's requests for a continuance of the trial date and for the appointment of counsel. Noting Appellant's failure to request permission to enter the United States until November 5, despite the Court's having informed the parties of the trial date on September 28, the Court held that Appellant had not acted diligently in filing his request. On December 8, 2006, with Appellant having failed to appear for trial, the Court dismissed the action with prejudice and without costs.

On December 21, 2006, Appellant filed a motion for reconsideration of the dismissal of the action based on his failure to appear at trial. In his motion, he explained that he mailed his application for permission to re-enter the United States on October 4, 2006, three days after receiving notice of the trial date, and that it was received the following day, but was not filed until November 5, 2006. He further represented that he was informed by DHS that his application would require a minimum of 90 days from the filing date for processing.

Based on the foregoing, Appellant argued that he had exercised diligence in seeking permission to re-enter.

On February 15, 2007, the District Court granted Appellant's motion, and rescheduled the trial for March 12, 2007.[2] On March 7, two weeks before the trial was set to begin, Appellant informed the Court that he had not yet received a response to his DHS application, detailed his efforts to obtain further information about his status, and requested a second adjournment. The court issued a one-sentence order denying his request. On March 21, 2007, with Appellant and counsel for Appellees all appearing telephonically, the Court denied Appellant's requests: (i) for a bench trial, (ii) to conduct the trial telephonically, and (iii) for a continuance. After hearing briefly from each of the parties, the Court made the following findings on the record with respect to Appellant's request for a continuance:

The last thing we have here is whether or not, this is what Mr. Adegbuji is requesting, another extension of time. [sic] Basically to be permitted upon the facts that he's trying to work through the Attorney General or the Department of Homeland Security in order to secure some type of permission to re-enter the country. Evidently Mr. Adegbuji had been deported some time ago. He's not authorized to enter the United States at this time. He has obviously made some efforts but in November he had represented to this Court he thought it would take 90 days. We've now waited five months. As far as I can tell we're no farther [sic] along the process than we were five months ago. It's speculative at best to think that either the Attorney General or the Department of Homeland

2. The following week, the Court rescheduled the trial to March 21, 2007 at the request of one of the Appellees' attorneys.

Security will permit his re-entry into the United States. This case is four years old. I think it was instituted in April of 2003. So, it's one of the oldest cases on the docket.

The Court is mindful that Mr. Adegbuji is not the only person that is part of this case. There are officers, there's [sic] municipalities. Fairness to them requires that I bring a conclusion to this matter. Mr. Adegbuji has had ample opportunity to be here and to be present. He's unable to do that. Although it may be for reasons out of his control, certainly the defendants in this case also have a right to fairness and fairness in this instance dictates that the case be dismissed at the present time with prejudice. I note that, I guess the rules would provide that lack of prosecution by the plaintiff would permit such dismissal.

So, relying upon those rules, Mr. Adegbuji's failure to appear for trial twice now, warrants dismissal with prejudice.

(Supplemental App. 216.)

The District Court entered judgment against Appellant on March 28, 2007. Appellant appealed, maintaining that the Court erred in dismissing the action with prejudice rather than staying it pending his receipt of a response from DHS. On September 7, 2007, after receiving responses from the parties, we entered an order summarily vacating the District Court's judgment and remanding the matter for explicit consideration of the of the factors delineated in *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir.1984), which we have required district courts to consider in connection with the entry of involuntary dismissal of a plaintiff's action pursuant to Federal Rule of Civil Procedure 41(b). Upon receipt of our order, the District Court ordered briefing on the *Poulis* issue. On January

7, 2008, the Court entered an order dismissing Appellant's case with prejudice for the reasons set forth in the record.

On May 16, 2008, a transcript was entered onto the District Court docket reflecting the District Court's January 7, 2008 oral findings on the *Poulis* factors:

(1) the extent of the *party's* personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.

*Poulis,* 747 F.2d at 867 (emphasis in original).

The Court held that it was difficult to evaluate the first, third or fourth factors in this case, as Appellant was deported due to his own criminal conduct, but has not intentionally delayed proceedings for reasons other than his removal from this country. (Supplemental App. 233–34.) Additionally, while the Court concluded that there was sufficient merit to Appellant's underlying claims to permit them to proceed to trial, the Court considered Appellant's case to be "weak." (Supplemental App. 234.) However, the Court concluded that the second and fifth factors clearly favored Appellees:

In this case there is potential prejudice to the defendant. This case is close to five years old at the present time. I believe that the attorneys for the defendants had indicated that a number of the witnesses had retired or left the service of the Middlesex County Department of Corrections. So, there's substantial prejudice to the defendants in this case.

. . .

The fifth factor is whether less restrictive sanctions are sufficient. This is

not a case of where other sanctions are available. It is a lack of prosecution due to his immigration status. Plaintiff is required to be here at the time of trial but it didn't happen. I don't believe there would be any other sanction that would be available. Plaintiff has been given sufficient time to resolve this matter.

. . .

So looking at all the factors it seems to me that the most substantial one is the prejudice to the defendants. The case is five years old. When cases get old, witnesses' memories fade. In addition, some of the witnesses may not be available, further prejudicing defendants. So it seems to me, there's substantial prejudice that warrants dismissal.

Having said that, the Court dismisses this case with prejudice after a thorough consideration of the *Poulis* factors.

(Supplemental App. 233–34.) Although it concluded that the case should be dismissed, the Court provided Appellant with an approximately six-month window during which he could move to re-open the proceedings should he receive permission to re-enter the United States. (Supplemental App. 234.) On July 23, 2008, the Court entered an order extending that time period until November 1, 2008 based on Appellant's representation that he had an interview scheduled with the United States Embassy on August 29, 2008. (Supplemental App. 182–83.) During that interview, it was determined that Appellant was not eligible for a Non–Immigrant Visa Waiver and, therefore, would not be permitted to enter the United States to attend trial. (Supplemental App. 185–87.)

Appellant timely appealed from the District Court's January 7, 2008 order of dismissal.[3] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a dismissal for failure to prosecute for abuse of discretion. *See In re Jewelcor Inc.*, 11 F.3d 394, 397 (3d Cir.1993).

Appellant argues that his civil action should not have been dismissed, as "all of the six factors *do not* weigh in favor of dismissal." (Appellant Br. 10.) However, we have never required complete satisfaction of each *Poulis* factor in order to justify the sanction of dismissal. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir.1992) ("As we have already recognized, not all of the *Poulis* factors need be satisfied in order to dismiss a complaint."); *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir.1988) ("Not all of these factors need be met for a district court to find dismissal is warranted."). Rather, we have stated that we will be guided by the way in which the District Court balanced all six of the *Poulis* factors. *See Poulis*, 747 F.2d at 868; *see also Quality Prefabrication, Inc. v. Daniel J. Keating Co.*, 675 F.2d 77, 80 (3d Cir.1982) (explaining that there must be some "articulation of the basis for the [district court's] action . . . [to] enable the reviewing court to determine whether the relevant factors were considered and assigned appropriate weight in making the decision"). As we have explained, we do not ask whether we would have made the same decision as the District Court, but rather whether the District Court *abused its discretion* in reaching the decision it did. *See Mindek*, 964 F.2d at 1373 ("Ultimately, the decision to dismiss constitutes an exercise of the district court judge's discretion and must

**3.** On January 18, 2008, Appellant timely filed a motion for reconsideration, which tolled the time for taking an appeal. *See* Fed. R.App. P. 4(a)(4). His notice of appeal was filed on April 21, 2008, within thirty days of the District Court's denial of his motion for reconsideration. *See id.; see also* Fed. R.App. P. 4(a)(1)(A).

be given great deference by this Court—a court which has had no direct contact with the litigants and whose orders, calendar, docket and authority have not been violated or disrupted."). Based on the protracted proceedings which have transpired below, the numerous opportunities the District Court provided Appellant to obtain permission to re-enter the United States, the length of time which has transpired since Appellant's complaint was filed, and the District Court's assessment of the prejudice to Appellees and the lack of alternative sanctions, we cannot conclude that the District Court's decision constitutes an abuse of discretion. Appellant further argues that the Court failed to make findings as to the prejudice to Appellees or the effectiveness of sanctions other than dismissal. (Appellant Br. 12–13, 15–16.) However, the transcript of the District Court's findings belies this assertion.

Based on the foregoing, we will affirm the judgment of the District Court.