# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 12-6003
_____

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| | * | |
| Cathleen Mary Foellmi, | * | |
| formerly known as Cathleen Mary Esch, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| _____ | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Cathleen Mary Foellmi, | * | District of Minnesota |
| | * | |
| Debtor – Appellant | * | |
| | * | |
| v. | * | |
| | * | |
| Charles W. Ries, | * | |
| | * | |
| Trustee – Appellee | * | |

_____

Submitted: June 20, 2012
Filed: July 31, 2012

_____

FEDERMAN, VENTERS and SALADINO, Bankruptcy Judges

_____

VENTERS, Bankruptcy Judge.


The Debtor appeals the bankruptcy court's order denying the Debtor's claim of an exemption for  limited partnership units that she received from her employer,

Kwik Trip, Inc. For the following reasons, we reverse the decision of the bankruptcy court.

## BACKGROUND

The Debtor, Cathleen Mary Foellmi, filed a Chapter 7 bankruptcy petition on February 16, 2011. On Schedule B, she listed an asset described as "CSI Kwik Trip Profit Sharing," valued at $58,217. She originally claimed an exemption for the full value of this asset under 11 U.S.C. § 522(d)(10)(E). The Trustee objected, and the bankruptcy court sustained the Trustee's objection on May 20, 2011. The Debtor then amended her Schedule C to claim the exemption under 11 U.S.C. § 522(d)(5). Once again, the Trustee objected, and before a ruling was entered the Debtor again amended Schedule C, this time to claim the exemption under Minn. Stat. § 550.37, Subd. 24.[1] The Debtor valued the asset at $69,109.97 and claimed the full amount as exempt, asserting that the amount over the statutory limit of $66,000 was reasonably necessary for her support.

The asset at issue is twenty units of ownership in a limited partnership called "Convenience Store Investments" (the "Limited Partnership" or "CSI"). The Limited Partnership was formed in 1989 as an affiliate of Kwik Trip, Inc.

Units in the Limited Partnership are distributed to qualified employees of Kwik Trip pursuant to an employee benefit plan ("Benefit Plan") created by Kwik Trip, Inc., in 1991.[2] According to the Disclosure Statement, the purpose of the Benefit Plan is "to provide employees who participate in the Plan with a tangible stake in Kwik Trip's business, with the ultimate goal being the promotion of

---

[1] Apparently, the bankruptcy court permitted the Debtor to amend her exemption and deemed the objection on file to apply to the Debtor's amended exemption under Minn. Stat. § 550.37, Subd. 24 instead of ruling on the Trustee's objection to the exemption claimed under 11 U.S.C. § 522(d)(5).

[2] Only the Plan's Disclosure Statement is in evidence, but the Trustee hasn't claimed that the Plan differs from the Disclosure Statement, so the absence of the Plan is not an issue.

greater employee loyalty and a general enhancement of the working environment for Kwik Trip employees."

Under the Benefit Plan, only employees with at least five years of continuous service (two years for management employees) can become limited partners. Additional Limited Partnership units purchased by Kwik Trip are allocated yearly to participating employees.

The Limited Partnership is governed by an "Amended and Restated Agreement of Limited Partnership."

Article IV of the Agreement provides for allocation of profits and losses among the partners in proportion to the number of units held by each. The Debtor received cash distributions of $2,160 in 2009 and $4,580 in 2010. The Debtor's 2009 Schedule K-1 indicates that there was also a $6,640 "net rental real estate loss."

Under the original terms of the Limited Partnership Agreement, a limited partner could withdraw at any time by requesting redemption of his or her units, but the General Partner could refuse to recognize any request for redemption of Units "for any reason whatsoever." Redemption rights were further restricted on March 28, 1994, when the General Partner announced that it would no longer honor requests for redemption, "except in the case where the unitholder is no longer employed by Kwik Trip, Inc."

Finally, § 8.3 of the Agreement provides that if a limited partner becomes bankrupt, the trustee of his estate "shall have title to the Units held by the Limited Partner at the time of his . . . bankruptcy and shall have all the rights of a Limited Partner for the purpose of settling or managing the . . . bankrupt Limited Partner's estate."[3]

---

[3] The bankruptcy court held, and we agree, that this provision does not affect the analysis of the Debtor's exemption rights. If her interest in CSI is exempt, title to the

On January 11, 2012, the bankruptcy court sustained the Trustee's objection to the Debtor's claim of exemption under Minn. Stat. § 550.37, Subd. 24. The bankruptcy court noted four reasons why the Debtor's interest in the limited partnership didn't meet these criteria: (1) The plan wasn't a "retirement or disability plan" because its stated purpose was "to provide employees who participate in the Plan with a tangible stake in Kwik Trip's business, with the ultimate goal being the promotion of greater employee loyalty and a general enhancement of the working environment for Kwik Trip employees." (2) Partnership interests simply aren't exempt under § 550.37. (3) The Debtor's interest in the limited partnership had to be redeemed upon termination of her employment from Kwik Trip. And (4) the distribution of profits and losses, and the partnership units themselves, are not rights to payment on account of illness, disability, death, age or length of service. "The only link to disability or qualified retirement is that redemption of the partnership units is not required by termination of employment due to disability or qualified retirement, as it is with all other termination of employment events."

The Debtor timely appealed.

## JURISDICTION

An order denying a debtor's exemption is a final order over which we have jurisdiction under 28 U.S.C. §158(b).[4]

## STANDARD OF REVIEW

The bankruptcy court's determination that the Debtor is not entitled to an exemption under Minn. Stat. § 550.37, Subd. 24 is a question of law subject to *de novo* review.[5]

_____

interests would revert to the Debtor.
[4] *See In re Huebner*, 986 F.2d 1222, 1223 (8th Cir. 1993).
[5] *See In re Peterson*, 897 F.2d 935, 937 (8th Cir. 1990) (entitlement to exemption is a question of law subject to *de novo* review).

**DISCUSSION**

Our analysis begins with the text of the statute on which the Debtor bases her claim of exemption, Minn. Stat. § 550.37, Subd. 24:

> Employee benefits. (a) The debtor's right to receive present or future payments, or payments received by the debtor, under a stock bonus, pension, profit sharing, annuity, individual retirement account, Roth IRA, individual retirement annuity, simplified employee pension, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent of the debtor's aggregate interest under all plans and contracts up to a present value of $30,000[6] and additional amounts under all the plans and contracts to the extent reasonably necessary for the support of the debtor and any spouse or dependent of the debtor.

Interpreting this exemption statute liberally, as we must,[7] we hold that it exempts the Debtor's interest in the CSI Limited Partnership to the extent of $66,000, the statutory maximum.

To qualify for the exemption under § 550.37, Subd 24, a plan must meet three criteria: (1) the debtor must have the right to receive, or have received, payments under a stock bonus, pension, profit sharing, annuity, individual retirement account, Roth IRA, individual retirement annuity, simplified employee pension or similar plan; (2) the right to receive the payments, or payments received, must be (or have been) on account of illness, disability, death, age or length of service; and (3) the debtor's aggregate interest under all such plans and contracts must have a present value of no more than $66,000 or be reasonably necessary for the debtor's support.[8]

---

[6] Subdivision 4a of this provision provides for the periodic adjustment of the dollar amounts of the exemptions. The base exemption amount for the relevant time period was $66,000.

[7] *See Bryan v. Stanton* (*In re Bryan*)*, 466 B.R. 460, 464* (B.A.P. 8th Cir. 2012) (citing *Norwest Bank Neb., N.A. v. Tveten* (*In re Tveten*), 848 F.2d 871, 875 (8th Cir. 1988))

[8] *See In re Gagne*, 166 B.R. 362, 363 (Bankr. D. Minn. 1993) aff'd in relevant part, *Gagne v. Bergquist*, 179 B.R. 884 (D. Minn. 1994).

First, the fact that § 550.37, Subd. 24 doesn't specifically exempt employee benefit plans that distribute limited partnership units to employees is not fatal to the Debtor's exemption claim; the statute specifically contemplates "similar" plans. And as the Supreme Court has instructed – with regard to the federal exemption statute dealing with nearly identical subject matter (11 U.S.C. § 522(d)(10)(E))[9] – that "[t]o be 'similar,' an IRA [or other unlisted plan] must be like, though not identical to, the specific plans or contracts listed in § 522(d)(10)(E), and consequently must share characteristics common to the listed plans or contracts."[10] The Court analyzed those characteristics as follows:

> The Bankruptcy Code does not define the terms "profitsharing," "stock bonus," "pension," or "annuity." Accordingly, we look to the ordinary meaning of these terms. A "profitsharing" plan, of course, is "[a] system by which employees receive a share of the profits of a business enterprise." Profitsharing plans may provide deferred compensation, but they may also be "cash plans" in which a predetermined percentage of the profits is distributed to employees at set intervals. A stock bonus plan is like a profitsharing plan, except that it distributes company stock rather than cash from profits. A pension is defined as "a fixed sum ... paid under given conditions to a person following his retirement from service (as due to age or disability) or to the surviving dependents of a person entitled to such a pension."

> The common feature of all of these plans is that they provide income that substitutes for wages earned as salary or hourly compensation. This understanding of the plans' similarities comports with the other types of payments that a debtor may exempt under § 522(d)(10)—all of which concern income that substitutes for wages. *See, e.g.*, § 522(d)(10)(A) ("social security benefit, unemployment compensation, or a local public assistance benefit"); § 522(d)(10)(B) ("a veterans' benefit"); § 522(d)(10)(C) ("disability, illness, or unemployment

---

[9] 11 U.S.C. § 522(d)(10)(E) exempts a debtor's "right to receive. . . (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor. . . . "

[10] *See Rousey v. Jacoway*, 544 U.S. 320, 329, 125 S.Ct. 1561, 1568 (2005).

benefit"); § 522(d)(10)(D) ("alimony, support, or separate maintenance"). But the plans are dissimilar in other respects: Employers establish and contribute to stock bonus, profitsharing, and pension plans or contracts, whereas an individual can establish and contribute to an annuity on terms and conditions he selects. Moreover, pension plans and annuities provide deferred payment, whereas profitsharing or stock bonus plans may or may not provide deferred payment. And while a pension provides retirement income, none of these other plans necessarily provides retirement income. *What all of these plans have in common is that they provide income that substitutes for wages*.[11]

As the italicized language indicates (in addition to the requirements discussed below), to qualify as a "similar plan," a plan must provide income that substitutes for wages, and *not necessarily as retirement or disability income*.

Here, the distribution of limited partnership units under the Plan and distributions under the CSI Limited Partnership Agreement approximate wages in several respects. Like wages, they reward employees for their service, with the "ultimate goal being the promotion of greater employee loyalty and a general enhancement of the working environment for Kwik Trip employees." Page 8 of the plan's disclosure document specifically states: "The objectives of CSI are to provide Securityholders [defined as any owner of a unit] with (1) cash flow from the lease of Properties it acquires and develops and (2) the opportunity to participate in the increase in equity . . . of Properties being acquired and developed . . . ." Moreover, the limited partnership units are taxed as wages in the period in which they are received. And the redemption of an employee's units upon termination or retirement likely replaces or supplements an ex-employee's wages.

Quite simply, if a stock bonus plan can be a substitute for wages, then so can the Kwik Trip Plan. The limited partnership units give the employee the possibility of a tangible financial benefit – just like a stock bonus plan. And the fluctuation in value of the partnership units would be no different than with a stock

---

[11] *See id*. at 544 U.S. 331 (emphasis added).

bonus plan. Thus, the Kwik Trip Plan is similar to the plan types specifically mentioned in the statute—particularly stock bonus plans.

Second, the Debtor's "right to receive present or future payments" or "payments received" must be on "account of illness, disability, death or length of service." We conclude that it is.

Under the Benefit Plan, the Debtor's employer, Kwik Trip, purchases enough Partnership units "once per year for immediate distribution to employees who meet certain eligibility criteria . . . discussed below under 'Eligibility.' " Eligibility is defined as follows:

> Eligibility. The Partnership Agreement permits Units to be awarded only to persons who, at the time of such award, are full-time or part-time Employees of Kwik Trip. . . . Under the current criteria, Eligible Employees are those who are full time employees as of the end of Kwik Trip's fiscal year for which the award is made, and who have completed at least five (5) continuous years of employment as of such date. Such employment must be continuous, however; it may include periods of part-time employment. For management employees (as defined by the Committee), the minimum employment period is two (2) years.

Thus, the right to payment under the Benefit Plan, *i.e.*, the right to receive Limited Partnership units, is unambiguously on account of "length of service."

The Trustee argues that distribution of profits and losses to the limited partners of CSI are not rights to payment on account of the listed factors. That is true with regard to the distribution of profits under the CSI Limited Partnership Agreement. Those distributions are, indeed, made "on account" of the profitability of the Limited Partnership. But the same would be true of the distribution of dividends to shareholders of a corporation where the shares were received under a stock bonus plan. It is also true under an exempt profitsharing plan, which the Supreme Court described as "[a] system by which employees receive a share of the

profits of a business enterprise." Moreover, although the gross amount of a cash distribution CSI unit holders might hinge on the profitability of CSI, the Debtor's share of any distribution of profits is directly related to the number of limited partnership units she owns, which in turn is directly related to the Debtor's length of service at Kwik-Trip.

In any event, we believe the Trustee's focus on the manner by which Debtor may receive a distribution of profits or losses from CSI is misplaced. Instead, the focus should be on what the Debtor has received or may receive under the employee benefit plan itself—i.e., the units of limited partnership. The Kwik Trip employee benefit plan distributes limited partnership units to employees of Kwik Trip. Those limited partnership units are precisely what Debtor has claimed as exempt in her bankruptcy case.

In sum, we conclude that the Kwik Trip Benefit Plan is similar to the plans listed in Minn. Stat. § 550.37, Subd. 24, and the right to payments thereunder are on account of the Debtor's length of service at Kwik Trip. Therefore, the Debtor may properly claim her interests in the limited partnership units distributed under the Kwik Trip employee Benefit Plan as exempt.

## CONCLUSION

For the reasons stated above, the decision of the bankruptcy court is reversed and remanded to determine whether the amount of the Debtor's interest in the Partnership and Benefit Plan over the $66,000 statutory limit is reasonably necessary for her support.

_____